FILED

2017 Mar-31  PM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

|  |  |  |
|---|---|---|
| **YVONNE B. PHILLIPS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:15-CV-00218-MHH** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Yvonne B. Phillips seeks judicial review of a final adverse decision of the Commissioner of Social Security.[1]  The Commissioner denied Ms. Phillips's claim for a period of disability and disability insurance.  After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Phillips applied for a period of disability and disability insurance benefits on January 14, 2013.  (Doc. 6-6, p. 2).  Ms. Phillips alleges that her

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html).  Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

disability began December 20, 2012.  (Doc. 6-6, p. 2).  The Commissioner initially denied Ms. Phillips's claim on March 22, 2013.  (Doc. 6-5, pp. 2-6).  Ms. Phillips requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 6-5, p. 10).  The ALJ issued an unfavorable decision on May 30, 2014.  (Doc. 6-3, pp. 49-57).  On January 9, 2015, the Appeals Council declined Ms. Phillips's request for review (Doc. 6-3, pp. 2-8), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In evaluating the evidence in the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for the judgment of the ALJ.  *Winschel v. Comm'r of Soc.*

*Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).    If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Phillips has not engaged in substantial gainful activity since December 20, 2012, the alleged onset date.  (Doc. 6-3, p. 51). The ALJ determined that Ms. Phillips suffers from the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, degenerative joint disease of the right knee, bilateral carpal tunnel syndrome, status post right release, and asthma.  (Doc. 6-3, p. 51).  The ALJ determined that Ms. Phillips suffers from the following non-severe impairments: obesity, diabetes, hypertension, plantar fasciitis, metatarsalgia, hyperlipidemia, seborrheic keratosis, fibromyalgia, and depression.  (Doc. 6-3, pp. 51-52).  Based on a review of the medical evidence, the ALJ concluded that Ms. Phillips does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 6-3, p. 53).

In light of Ms. Phillips's impairments, the ALJ evaluated her residual functional capacity.   The ALJ determined that Ms. Phillips has the residual functional capacity or RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she is precluded from overhead work activity and from climbing ramps, stairs, ladders, and scaffolds.  She may frequently use her hands for handling, fingering, feeling, and use of hand controls.   She is precluded from working at unprotected heights or around hazardous moving mechanical parts.  She is further precluded from working in

exposure to extreme temperatures, respiratory irritants, fumes, and gases.

(Doc. 6-3, p. 53). Based on this RFC and testimony from a vocational expert, the ALJ concluded that Ms. Phillips is able to perform her past relevant work as a dispatcher, real estate agent, receptionist, cashier, and general office clerk. (Doc. 6-3, p. 56-57). Accordingly, the ALJ determined that Ms. Phillips has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, p. 57).

## IV.  ANALYSIS

Ms. Phillips argues the ALJ's decision is not supported by substantial evidence because the ALJ erroneously concluded that Ms. Phillips's subjective testimony was not credible; that she retained the RFC to perform light work; and that she can perform her past work.[2]  Ms. Phillips also argues that the Appeals Council erred by failing to determine if newly submitted evidence was chronologically relevant so as to require remand, and she asks the Court to remand pursuant to sentence four to require the ALJ to consider the records of Dr. Huma Khusro, Dr. James White, and Dr. Daniel Ryan.  Finally, Ms. Phillips asks the Court to remand pursuant to sentence six to require the ALJ to consider medical

---

[2] Ms. Phillips generally argues that the ALJ's decision is not supported by substantial evidence. (Doc. 11, p. 20).  This argument is conclusory and merely synthesizes the three specific arguments that Ms. Phillips makes in her initial brief.  The Court finds that substantial evidence supports the ALJ's factual findings.

records concerning back surgery that Ms. Phillips had on August 15, 2016.  The Court considers these arguments in turn.

### A. Substantial Evidence Supports the ALJ's Decision to Reject Ms. Phillips's Subjective Pain Testimony.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).  A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).  If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so."  *Wilson,* 284 F.3d at 1225.  "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); *see* SSR 16-3p, 2016 WL 1119029 at *9 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

6

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").[3]

At the administrative hearing in this case, Ms. Phillips testified that she has "constant pain in [her] back" and "problems seeing at night" which limits her ability to drive. (Doc. 6-3, pp. 69-70). Ms. Phillips also testified that she has arthritis in both hands and carpal tunnel in her left hand. She had carpal tunnel surgery on her right hand and needs surgery on her left. (Doc. 6-3, p. 77). She testified that she can only sit 30-40 minutes before needing to stand from the pain "[u]nless [she is] in [her] recliner and reclined." (Doc. 6-3, p. 79). She explained that epidurals make her feel better, though they raise her blood sugar. (Doc. 6-3, p. 81). She explained that she cannot work because of "the constant pain in [her] back and [her] neck and [her] fibromyalgia." (Doc. 6-3, pp. 71-72). She testified that she takes Norco, Cymbalta, and Mobic to treat her symptoms and that she experiences no side effects from those medications. (Doc. 6-3, p. 72).

Ms. Phillips testified that, on average, her pain is a "6" while on her worst days her pain is an "8 and a half." (Doc. 6-3, p. 82). She stated that her "average day" depends on "how bad [her] fibromyalgia is hurting. Usually it's excruciating." (Doc. 6-3, p. 72). She testified that some days she is able to make

---

[3] SSR 16-3p became effective in March 2016, nearly two years after the ALJ issued her decision in this case. Ms. Phillips argues that SSR 16-3p is retroactive and that the Court should remand this case to the Commissioner for an assessment of her subjective complaints of pain under the new ruling. (Doc. 23). The Court addresses Ms. Phillips's motion to remand on the basis of SSR 16-3p below. *See supra* pp. 13-18.

breakfast, but otherwise her household chores "don't get done."  (Doc. 6-3, pp. 72-73).  Ms. Phillips stated that when her youngest grandchild, who is five years old, comes over, "we don't go and do anything hardly."  (Doc. 6-3, p. 73).  She reported that she occasionally goes grocery shopping at Wal-Mart and "usually" goes to church.  (Doc. 6-3, pp. 73-74).

The ALJ accurately summarized Ms. Phillips's testimony, and substantial evidence supports the ALJ's finding that Ms. Phillips's medically determinable impairments could reasonably be expected to cause the pain she described, but her "statements involving the intensity, persistence, and limiting effects of these symptoms" are not credible.  (Doc. 6-3, p. 55).  The ALJ focused on discrepancies between Ms. Phillips's testimony and the daily activities described in function reports that Ms. Phillips and her husband completed.

For example, Mr. Phillips reported that Ms. Phillips prepared three meals daily, washed dishes, dusted, sometimes mopped the floors, and carried out trash.  (Doc. 6-7, p. 23).  Mr. Phillips added that he sometimes performed these tasks when Ms. Phillips "doesn't feel good" and sometimes "just to help."  (Doc. 6-7, p. 23).  The function reports indicate that in addition to this light house work, Ms. Phillips sometimes goes to yard sales and visits with Mr. Phillips's parents.  (Doc. 6-7, p. 25).  Mr. Phillips did corroborate Ms. Phillips's testimony that she cannot sit or stand for "long period[s] of time."  (Doc. 6-7, p. 22).  However, Mr.

Phillips's description of Ms. Phillips's daily activities contradicts Ms. Phillips's testimony that chores "don't get done" or that Ms. Phillips has as much difficulty completing chores as she described.  (Doc. 6-3, p. 73).

Ms. Phillips's medical records also are inconsistent with her testimony about her pain.  In October 2012, following back surgery, Dr. James White found Ms. Phillips to have "normal postop lumbar spine x-rays."  (Doc. 6-9, p. 54).  When Ms. Phillips was admitted to the emergency room in December 2012 for pneumonia, she complained of a sudden onset of back pain, the worst of which was a "7 [out of] 10," but the emergency physicians found her neck "supple," and she had normal "joint range of motion" and other benign musculoskeletal findings. (Doc. 6-9, pp. 43, 49).

In March 2013, Dr. Sathyan Iyer performed a consultative exam on Ms. Phillips at the request of the Disability Determination Service.  Ms. Phillips reported having a "low back problem for many years," knee pain that required cortisone shots, occasional neck pain, and numbness in her fingers.  (Doc. 6-9, p. 3).  After a physical exam, Dr. Iyer noted that Ms. Phillips's neck was limited in extension movement to ten degrees but was otherwise normal.  (Doc. 6-9, p. 4). Ms. Phillips had full range of motion in her shoulders, elbows, and wrists.  (Doc. 6-9, p. 4).  Ms. Phillips had normal grip strength and muscle power in her right hand.  (Doc. 6-9, p. 4).  She had "[d]ecreased touch sensation over the [left] index

finger compared to the [left] little finger, but Ms. Philips's grip strength and opposition functions in her left hand were normal.  (Doc. 6-9, p. 5).  Her lumbar spine was "[t]ender over the suprascapular and interscapular muscles" and limited in its extension and flexion movement, but she had "full rotation motions."  (Doc. 6-9, p. 5).  Ms. Phillips had full range of motion in her hips, knees, and ankles.  (Doc. 6-9, p. 5).

After talking with Ms. Phillips and examining her, Dr. Iyer concluded that Ms. Phillips suffered from lower back pain with a restricted range of motion secondary to underlying degenerative joint and disc disease, history of bilateral carpal tunnel syndrome with carpal tunnel release on the right, history of degenerative disc disease of the cervical spine, and obesity.  (Doc. 6-9, p. 5).  Dr. Iyer believed that in Ms. Phillips's "current condition, she could have impairment of functions involving bending, lifting, squatting, climbing, pushing, pulling, handling and overhead activities.  She does not have limitation of functions involving sitting, standing, walking, hearing, or speaking."  (Doc. 6-9, p. 6).

Dr. James White examined Ms. Phillips three times between April 19, 2013 and May 22, 2013.  In April 2013, an MRI of Ms. Phillips's back revealed "posterior bulging of the L4 disc at the level above the fusion [at L5-S1]" but showed no signs of a herniated disc.  (Doc. 6-12, p. 69).  To address Ms. Phillips's back pain associated with the bulging disc, Dr. White suggested an epidural.  Ms.

Phillips reported that the epidural provided "good relief" for her pain. (Doc. 6-12, pp. 66-67). Dr. White's records contain no information about Ms. Phillips's fibromyalgia, knee pain, or fatigue. (Doc. 6-12, p. 66-69, 71).

In July 2013, Ms. Phillips sought treatment at the Anniston Medical Clinic for diabetes, hypertension, hyperlipidemia, and a hypothyroid issue. (Doc. 6-13, p. 3). A physical exam of her neck and musculoskeletal system revealed no issues or tenderness. (Doc. 6-13, pp. 3-4). The records contain no information about knee, back, or neck pain, fibromyalgia, or fatigue.

Ms. Phillips returned to Anniston Medical Clinic in September 2013 to request treatment for "back pain." (Doc. 6-13, p. 60). Dr. Vishala Chindalore noted that Ms. Phillips complained of "aching, constant, throbbing" pain and discomfort in her back; the pain was occurring "daily," but the pain "d[id] not limit activities." (Doc. 6-13, p. 60). Dr. Chindalore reported that Ms. Phillips had "problems with joints and muscles" and suffered from "morning stiffness [that] lasts 20 mins." (Doc. 6-13, p. 60). Dr. Chindalore stated that Ms. Phillips was experiencing fatigue. (Doc. 6-13, p. 60). Upon examination, Ms. Phillips's neck was "supple with good c-spine range of motion," and her extremities seemed to be in good condition aside from "swelling and deformities" in her hands. (Doc. 6-13, pp. 61-62). Ms. Phillips's gait was normal, and she reported no complaints of knee pain. (Doc. 6-13, p. 62). X-rays showed "mild" carpel tunnel syndrome in both

hands and mild "medial joint space narrowing" in her knees; otherwise, "no other significant abnormalities" were noted. (Doc. 6-13, p. 64).

Ms. Phillips returned to Anniston Medical Clinic in February 2014. Her chief complaints were "back pain, osteoarthritis." (Doc. 6-14, p. 24). Dr. Chindalore noted that Ms. Phillip's back pain was "[d]oing well with Mobic" and that Ms. Phillips was receiving steroid injections for her knee pain. (Doc. 6-14, p. 24). Dr. Chindalore described Ms. Phillips's back pain as "aching, chronic." (Doc. 6-14, p. 24). Dr. Chindalore noted that Ms. Phillips's chronic osteoarthritis was "stable." (Doc. 6-14, p. 24). Dr. Chindalore performed a physical exam and found no issues in Ms. Phillips's neck and musculoskeletal system, with the exception of "swelling and deformities" in her hands. (Doc. 6-14, pp. 25-26). Her gait was normal. Her lumbar spine flexion was within "normal limits." (Doc. 6-14, p. 26). Both knees were arthritic but were otherwise normal. (Doc. 6-14, p. 26). Dr. Chindalore recommended that Ms. Phillips continue taking her Mobic and return for a check-up in two months. (Doc. 6-14, p. 26). The records from this visit contain no information about neck pain or fibromyalgia.

Given the inconsistency between Ms. Phillips's testimony about her pain and the evidence of her daily activities and her medical treatment that addressed and controlled her pain, the ALJ's decision to discount Ms. Phillips's testimony rests on substantial evidence. *See Parks v. Comm'r of Soc. Sec.*, 353 Fed. Appx. 194,

197 (11th Cir. 2009) (per curium) ("The record supports the ALJ's conclusion because it shows Parks was able to cook, clean, run errands, drive, and attend church weekly. Additionally, medical evidence shows Parks' medication reasonably controlled her pain. Thus, the ALJ's rejection of Parks' subjective pain testimony was based on adequate reasons as the effectiveness of Parks' medication and her ability to perform chores, drive, and attend church are inconsistent with her testimony of debilitating pain."); *Eckert v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 784, 791 (11th Cir. 2005) ("[T]he credible medical evidence, as found by the ALJ, did not confirm the severity of the alleged pain and the objectively determined medical condition was not of such a severity that it can reasonably be expected to give rise to the alleged pain.").

In a motion that Ms. Phillips filed on October 17, 2016, she asks the Court to remand this action to the Commissioner, so that the ALJ may reconsider her subjective complaints of pain pursuant to Social Security Ruling 16-3p. (Doc. 23). SSR 16-3p superseded SSR 96-7p (the ruling concerning subjective complaints of pain that was in effect when the ALJ issued a decision in this case) and "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." 2016 WL 1119029, at * 1. Although SSR 16-3p became effective on March 28, 2016, *see* 2016 WL 1237954, at *1, Ms. Phillips argues that SSR 16-3p

applies retroactively and that the ALJ must evaluate her subjective complaints consistent with the new ruling.

SSR 16-3p adjusts the terminology relating to assessment of an individual's description of his symptoms and refocuses the assessment.  SSR 16-3p:

> [e]liminat[es] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as [the Administration's] regulations do not use this term.  In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.  We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult. . . .

2016 WL 1119029, at *1-2.  The ruling provides that:

> [a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments.  In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. . . .

2016 WL 1119029, at *10.

SSR 16-3p does not change the regulations that set forth the factors that an ALJ should consider when examining subjective pain testimony.  *See* 2016 WL 1119029, at *7 (explaining that in addition to objective medical evidence and statements from a claimant and medical and non-medical sources, an ALJ may evaluate the intensity, persistence, and limiting effects of an individual's symptoms against the factors contained in 20 C.F.R. §§ 404.1529(c), 416.929(c)(3)).  SSR 16-3p, like SSR 96-7p before it, instructs an ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  2016 WL 1119029, at *4; *see* SSR 96-7p, 1996 WL 374186, at *1 ("[T]he adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.").

In support of her argument that SSR 16-3p applies retroactively, Ms. Phillips cites a Seventh Circuit Court of Appeals opinion which refers to the new ruling but

does not discuss its retroactivity.[4]   Ms. Phillips also cites a number of district court

decisions which have held that the new ruling is retroactive.  (*See* Doc. 23, pp. 2-4;

Doc. 27, pp. 1-3).[5]   Some district courts have determined that SSR 16-3p is not

retroactive.[6]  Neither the Supreme Court nor the Eleventh Circuit has addressed the

retroactivity of SSR 16-3p.

Generally, administrative rulings are not retroactive.   *See Bowen v.*

*Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored

---

[4]  *See Cole v. Colvin*, 831 F.3d 411, 412, 416 (7th Cir. 2016) (explaining that SSR's removal of the word "credibility" from an ALJ's analysis "is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character" but that "administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence" and remanding not because SSR 16-3p is retroactive but because the "administrative law judge's decision was unreasoned.").

[5]  *See e.g.*, *Mendenhall v. Colvin*, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("SSR 16-3p applies retroactively."); *McCammond v. Colvin*, 2016 WL 3595736, at *2 (N.D. Ill. July 5, 2016) ("Though [SSR 16-3p] post-dates the ALJ's hearing and decision in this case, the application of a new Ruling to matters on appeal is appropriate where the new Ruling is a clarification of existing law rather than a change to it.") (citing *Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)); *Turner v. Colvin*, 2016 WL 3088134, at *8 (N.D. Ill. June 2, 2016) (same).

[6]  *See e.g.*, *Lane v. Berryhill*, 2017 WL 976923, at *4 n. 8 (S.D. Ga. Feb. 16, 2017) ("Absent clear language in SSR 16-3p expressly stating its retroactive effect or binding precedent in *this* Circuit requiring reviewing courts to so apply it, the Court declines to impose the new Ruling on the ALJ's credibility analysis made prior to its enactment.") (emphasis in *Lane*); *Bagliere v. Colvin*, 2017 WL 318834, at *8 (M.D.N.C. Jan. 23, 2017) ("In sum, because SSR 16–3p changes (rather than clarifies) existing SSA policy regarding subjective symptom evaluation, that Ruling does not apply retroactively to the ALJ's decision in this case."); *Culbreath v. Colvin*, 2016 WL 6780347, at *3 n. 2 (W.D.N.C. Nov. 15, 2016) ("Because SSR 96-7p was in effect at the time of [the ALJ's] decision, this Court will review the decision under SSR 96-7p."); *Keefer v. Colvin*, 2016 WL 5539516, at *11 n. 5 (D.S.C. Sept. 30, 2016) ("Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under SSR 96-7p.").

in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").  SSR 16-3p does not contain retroactivity language, and the Court has located no authority suggesting that this general principle is inapplicable to social security rulings like SSR 16-3p.  *See* 42 U.S.C. § 405(a) (giving the Social Security Commissioner "full power and authority to make rules and regulations" but not expressly permitting retroactive rule-making).  Therefore, the Court is not inclined to hold that SSR 16-3p applies retroactively, especially where, as here, retroactive application would not save Ms. Phillips's claim.

In her assessment of Ms. Phillips's subjective complaints of pain, the ALJ found that Ms. Phillips's statements concerning her pain were "not entirely credible." (Doc. 6-3, p. 55).  Although the ALJ used the term "credible," the ALJ did not base her findings on evidence in the record that was unrelated to Ms. Phillips's impairments, and she did not assess whether Ms. Phillips generally was a truthful person.  Instead, consistent with SSR 16-3p, the ALJ reviewed Ms. Phillips's testimony about her pain, her activities of daily living, and her medical records and treatment notes.  (*See supra* pp. 6-13; *see generally* Doc. 6-4, pp. 54-56).  Accordingly, even if SSR 16-3p applies retroactively, remand is not warranted.

## B.  Substantial Evidence Supports the ALJ's Finding That Ms. Phillips Can Perform Her Past Work.

"An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments." *Packer v. Commissioner, Social Sec. Admin.*, 542 Fed. Appx. 890, 891 (11th Cir. 2013) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)). When an ALJ evaluates a claimant's RFC, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer,* 542 Fed. Appx. at 891-92 (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)). Here, the ALJ determined that Ms. Phillips can perform light work with a number of postural and environmental limitations. (Doc. 6-3, p. 53). Ms. Phillips argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC analysis is conclusory and because the ALJ did not perform a function-by-function analysis. (Doc. 11, pp. 27-31). The Court disagrees.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function by function basis. . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184, at *1. In making her RFC assessment, the ALJ discussed in

detail the evidence in the record, including Ms. Phillips's medical records, Ms. Phillips's testimony and Function Report, and the evaluation from consultative examiner Dr. Iyer. (Doc. 6-3, pp. 53-56). The record indicates that the ALJ considered all of the relevant evidence in arriving at her RFC determination. The ALJ's finding that Ms. Phillips's maximum exertion is classified as modified light work is consistent with reports of Ms. Phillips's daily activities and with her medical record. Therefore, the ALJ's decision is supported by substantial evidence and is entitled to deference. *See Carson v. Comm'r of Soc. Sec.*, 440 Fed. Appx. 863, 864 (11th Cir. 2011) (the ALJ complied with SSR 96-8p because he "fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment had on [the claimant's] daily activities"); *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959 (11th Cir. 2007) ("[T]he ALJ complied with SSR 96-8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").

In addition, at Ms. Phillips's hearing, the ALJ asked the vocational expert if someone with Ms. Phillips's RFC would be capable of performing Ms. Phillips's past relevant work as a dispatcher, real estate agent, receptionist, and general office clerk. (Doc. 6-3, pp. 84-85). The vocational expert testified that Ms. Phillips "could perform all of the past jobs." (Doc. 6-3, p. 85). Although the ALJ was not

required to question the vocational expert, the vocational expert's testimony provides additional evidence that Ms. Phillips can perform her past work. *See Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. Appx. 827, 832 (11th Cir. 2006) (generally, "VE testimony is not necessary to determine whether a claimant can perform her past relevant work"). Based upon the record as a whole and the vocational expert's testimony, there is substantial evidence in the record to support the ALJ's conclusion that Ms. Phillips is capable of returning to her prior employment.

### C.   The Evidence Submitted to the Appeals Council Does Not Warrant Remand.

While her case was pending before the Appeals Council, Ms. Phillips submitted additional evidence for the Appeals Council's review, including progress notes from Dr. Huma Khusro dated August 12, 2014 (Doc. 6-3, pp. 10-11); records of exams by Dr. Daniel Ryan from Northeast Orthopedic Clinic dated June 30, 2014, July 10, 2014, and July 15, 2014 (Doc. 6-3, pp. 19-29); and treatment notes from visits with Dr. White in June and July 2014 (Doc. 6-3, pp. 33-39). Ms. Phillips argues that the Appeals Council erroneously failed to consider this new evidence that post-dates the ALJ's May 30, 2014 decision. (Doc. 11, pp. 3-5; Doc. 15, p. 1; Doc. 20, pp. 1-2).[7]

---

[7] Ms. Phillips also submitted evidence to the Appeals Council that pre-dates the ALJ's decision. These records include: medical evidence from Alabama Orthopedic dated August 31, 2007 (Doc.

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council must review evidence that is new, material, and chronologically relevant. *Ingram,* 496 F.3d at 1261. The Court reviews de novo whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Evidence is "new" if it is not redundant of evidence already present in the record. As discussed in greater detail below, the records that Ms. Phillips presented to the Appeals Council that post-date the ALJ's decision constitute new evidence.

Evidence is chronologically relevant if it relates to the period on or before of the ALJ's decision. 20 C.F.R. 404.970(b). A medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that

---

6-14, pp. 55); medical evidence from Orthopedic Specialists of Alabama dated March 30, 2007 through September 25, 2007 (Doc. 6-14, pp. 56-61); medical evidence from Gadsden Orthopedics dated July 23, 2003 through April 11, 2006 (Doc. 6-14, pp. 62-64); medical evidence from Dr. James White dated October 21, 2013 through February 3, 2014 (Doc. 6-3, pp. 30-32; Doc. 6-14, pp. 65-67); and medical evidence from Northeast Orthopedic Clinic dated January 8, 2014 (Doc. 6-14, p. 68). (*See* Doc. 6-3, pp. 2-3, 7-8). The Appeals Council considered this evidence that was dated before the ALJ's decision and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Doc. 6-3, pp. 2-3). The Appeals Council properly considered this evidence. *Parks ex rel. D.P. v. Comm'r of Soc. Sec.*, 783 F.3d 847, 852 (11th Cir. 2015) ("The Appeals Council stated that it considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record. The Appeals Council was not required to do more.").

pre-existed the ALJ's opinion.  *Washington*, 806 F.3d at 1322-23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)).  In *Washington*, a consultative examiner provided an opinion regarding a claimant's mental condition.   The opinion post-dated the ALJ's decision; however, the Court found that the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout this life" and on the state of the claimant's cognitive abilities before the ALJ issued a decision.   *Id.* at 1322.   In addition, the consultative examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations."  *Id.*

Ms. Phillips cites *Washington*, but she does not explain how the rationale in *Washington* extends to her case.  (*See* Doc. 15, pp. 1-2; Doc. 20; Doc. 22).  Unlike the consultative examiner's report in *Washington*, Ms. Phillips's new evidence that post-dates the ALJ's decision does not demonstrate that physicians relied on reports that Ms. Phillips experienced pain during the relevant time period or that the physicians reviewed treatment records from before the ALJ's decision that speak to Ms. Phillips's physical or mental health conditions.  (Doc. 6-3, pp. 10-11,

19-39).[8]  In addition, Dr. Ryan's note that Ms. Phillips's symptoms associated with her knee pain had "worsened dramatically" by July 2014 indicates that Ms. Phillips's condition declined in the period following the ALJ's decision.  (Doc. 6-3, p. 22).   Therefore, the Appeals Council was not required to consider this evidence.   *See Washington*, 806 F.3d at 1322 (noting, with respect to the consultative examiner's opinion, that "[t]here [wa]s no assertion or evidence . . . that [the claimant's] cognitive skills declined following the ALJ's decision."); *see also* HALLEX I-3-3-6(B) ("Evidence is not related to the period at issue when the evidence shows . . . [a] worsening of the condition . . . after the date of the ALJ decision.").[9]  Even if Ms. Phillips's new evidence is chronically relevant, remand is not required here because the evidence is not material.

---

[8] Dr. Ryan's remarks that Ms. Phillips's onset of knee pain was "month(s) ago" and that Ms. Phillips "was previously evaluated in this clinic" are not specific and do not demonstrate with clarity that his June 30, 2014 treatment note relates to a period before the ALJ's May 20, 2014 decision.  (Doc. 6-3, p. 19).  Nevertheless, as explained below, even if these medical records are chronologically relevant, the evidence does not change the administrative result.

[9] HALLEX stands for the Hearings, Appeals, and Litigation Law Manual.  The manual states its purpose as follows:

> Through HALLEX, the Deputy Commissioner for Disability Adjudication and Review conveys guiding principles, procedural guidance, and information to Office of Disability Adjudication and Review staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels. It also includes policy statements resulting from Appeals Council *en banc* meetings under the authority of the Appeals Council Chair.

*See* https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html.

For supplemental evidence to be material, the evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *see also Costigan*, 603 Fed. Appx. at 787 (11th Cir. 2015) ("When a claimant properly presents new evidence to the Appeals Council and it denies review, a reviewing court essentially considers the claimant's evidence anew to determine whether that new evidence renders the denial of benefits erroneous.") (internal citations omitted).

Dr. Khusro's August 12, 2014 report states that Ms. Phillips complained of depression and anxiety. (Doc. 6-3, p. 10). Ms. Phillips told Dr. Khusro that she worked as a 911 dispatcher from September 2012 through December 2012. When Ms. Phillips tried to return to work, she told Dr. Khusro that she could not perform her work "physically or emotionally." (Doc. 6-3, p. 10). Ms. Phillips rated her depression at a 7-8 on a 10 point scale. She reported having "restless sleep" and "crying spells." (Doc. 6-3, p. 10). Ms. Phillips also explained that she had a "horrible" childhood, was abused by her father, and left home in her 20s. (Doc. 6-3, p. 10). Dr. Khusro made no detailed examination findings, and she did not recommend any work-related limitations due to Ms. Phillips's depression and anxiety. (Doc. 6-3, p. 11).

On June 30, 2014, Ms. Phillips saw Dr. Ryan for "sharp and aching" knee pain. (Doc. 6-3, p. 19). Dr. Ryan noted that Ms. Phillips's pain was "relieved by rest." (Doc. 6-3, p. 19). Dr. Ryan found "tenderness to palpation in the lateral joint line, satisfactory ROM, [and] minimal swelling." (Doc. 6-3, p. 22). An x-ray showed "mild arthritic changes" and "some narrowing of the lateral joint space but that's minimal as well." (Doc. 6-3, p. 22). Dr. Ryan concluded that Ms. Phillips's "[w]orsening knee pain [was] suggestive of a lateral meniscal tear." (Doc. 6-3, p. 22). Dr. Ryan obtained an MRI on July 10, 2014 that showed a "small radial tear in the body of the lateral meniscus" and a "peripheral tear [in] the junctional zone of the medial meniscus." (Doc. 6-3, p. 23). On July 15, 2014, Dr. Ryan recommended a knee arthroscopy. (Doc. 6-3, p. 26). Dr. Ryan arranged the surgery and planned to see Ms. Phillips after the operation. (Doc. 6-3, p. 26). As noted above, because Dr. Ryan's treatment notes suggest that Ms. Phillips's knee pain worsened after the ALJ's decision, the Appeals Council was not required to consider this evidence. *See supra* p. 23.

In any event, the treatment notes do not change the administrative result. Neither the June 2014 report nor the July 2014 report suggests that Ms. Phillips's knee pain was debilitating during her alleged disability period. Rather, these records suggest that Ms. Phillips's lateral meniscus tear occurred after the ALJ's decision and would not have impacted the ALJ's analysis of the alleged period of

disability.   While Dr. Ryan's notes demonstrate that Ms. Phillips tore her meniscus, Dr. Ryan does not provide an opinion regarding Ms. Phillips's limitations associated with the meniscus tear and the arthroscopy, and he does not suggest that Ms. Phillips is unable to work because of the meniscus tear.   In addition, Dr. Ryan's notes do not mention other symptoms or complaints.  (Doc. 6-3, pp. 19-29).

On June 25, 2014, Ms. Phillips saw Dr. White because she was experiencing "more pain in her back and not her legs" and she "also developed some neck pain." (Doc. 6-3, p. 33).  Dr. White found "paralumbar tenderness but no obvious overt sensory or motor deficits."  (Doc. 6-3, p. 33).  Ms. Phillips had "normal gait and station."  (Doc. 6-3, p. 33).  Ms. Phillips had a "positive Spurling sign producing pain in her right arm."  (Doc. 6-3, p. 33).  Dr. White diagnosed neck and low back pain and recommended an MRI.   (Doc. 6-3, pp. 33-34).   Ms. Phillips did not mention fatigue, fibromyalgia, or knee pain during her meeting with Dr. White. (Doc. 6-3, p. 33).  Dr. White's examination notes do not provide evidence that would change the ALJ's decision.  Dr. White found that a July 7, 2014 spinal x-ray revealed an "[p]osterior bulge at L4," but otherwise, the x-rays showed an "[e]ssentially normal postoperative cervical spine" and an "[e]ssentially normal postoperative lumbar spine."  (Doc. 6-3, pp. 35-37).   Dr. White recommended a

lumbar epidural, but he made no other comments regarding limitations associated with Ms. Phillips's back pain. (Doc. 6-3, p. 39).

In sum, even if the reports from Dr. Khusro, Dr. Ryan, and Dr. White were chronologically relevant, the information in those records does not support Ms. Phillips's testimony about the severity of her symptoms. The medical record as a whole demonstrates that Ms. Phillips has suffered from back and knee pain, but the pain was not significant enough to warrant restrictions on Ms. Phillips's activities while she received treatment. Therefore, the Appeals Council did not err by failing to review evidence that post-dates the ALJ's decision. *See McCants v. Comm'r of Soc. Sec.*, 605 Fed. Appx. 788, 791 (11th Cir. 2015) (finding that remand was unnecessary for the Appeals Council to consider medical evidence that post-dated the ALJ's decision because the evidence did "not change the conclusion that the denial of benefits [] was supported by substantial evidence").[10]

### D. Medical Records Concerning Ms. Phillips's August 15, 2016 Back Surgery Do Not Require Remand.

Ms. Phillips contends that new evidence documenting her August 15, 2016 back surgery requires remand under sentence six. (Doc. 29). To demonstrate that

---

[10] With the exception of bringing to the Court's attention the Eleventh Circuit's opinion in *Washington v. Comm'r of Soc. Sec.*, 807 F.3d 1317 (11th Cir. 2015), the arguments contained in Ms. Phillips's January 14, 2016 motion to remand largely repeat those she made in her initial brief regarding the Appeals Council's failure to consider new evidence. (*Compare* Doc. 11 pp. 18-19, 38-39 *with* Doc. 20). The Court discussed *Washington* above and explained why it does not save Ms. Phillips's claim. Therefore, the Court denies Ms. Phillips's motion to remand. (Doc. 20).

remand is appropriate pursuant to sentence six, Ms. Phillips must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (internal quotation marks and citation omitted); *see also Couch v. Astrue*, 267 Fed. Appx. 853, 857 (11th Cir. 2008) ("A remand under sentence six is "'appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'") (quoting *Ingram*, 496 F.3d at 1261).

The medical records that Ms. Phillips submitted regarding her August 15, 2016 back surgery are new, and Ms. Phillips has shown good cause for not submitting the evidence at the administrative level because the records were not available before the conclusion of the administrative proceedings. *See Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 96 (11th Cir. 2005). However, the Court finds that the new records do not require remand because Ms. Phillips has not shown that the evidence is material.

The new evidence explains that Ms. Phillips "underwent a L4 TLIFs with pedicle screw and rod fixation L4 through S1 on August 15, 2016." (Doc. 29-1, p.

11).   During a preoperative visit with Dr. Henry Ruiz and Physician's Assistant Carla Schaaphok, Ms. Phillips complained of "low back pain and lower extremity pain."   (Doc. 29-1, pp. 1, 8).   Dr. Ruiz and Ms. Schaaphok explained that Ms. Phillips had "developed persistent foraminal stenosis and compression to the S1 nerve roots along with adjacent segment degeneration at L4 with a grade I spondylolisthesis and impingement of L5 nerve roots." (Doc. 29-1, pp. 1, 8).   X-rays showed "pedicle fusion screws at L4, L5, and S1 with diskectomies at L4 and L5" and a "decompression laminectomy at L5."  (Doc. 29-1, p. 6).

Ms. Phillips's surgical wound failed to heal properly, so Dr. Ruiz performed a follow-up procedure on September 12, 2016.  (Doc. 29-1, pp. 11-12).  Before and after the procedure, Dr. Ruiz diagnosed Ms. Phillips with "[l]umbar wound dehiscence with secondary wound infection." (Doc. 29-1, p. 11).

The new records demonstrate that Ms. Phillips had back surgery in August 2016 and that she required additional treatment to help her incision heal.   The evidence does not contain new or additional restrictions or limitations associated with Ms. Phillips's back pain.  *See Magill*, 147 Fed. Appx. at 96 (finding that new medical records were not material because the evidence did not reflect "new restrictions or limitations in addition to those the ALJ had already considered, partially adopted, and partially rejected.").  Moreover, the evidence suggests that Ms. Phillips's condition worsened after the administrative proceedings, and she

elected to have surgery to help alleviate the pain that existed as of August 2016.[11]

Therefore, the evidence does not reflect "the extent of her disability prior to the [administrative] decision, which was well-documented through other medical evidence." *See Gallina v. Comm'r of Soc. Sec.*, 202 Fed. Appx. 387, 389 (11th Cir. 2006). Accordingly, the new evidence concerning Ms. Phillips's Augsut 2016 back surgery is not material because it does not provide a reasonable possibility that the ALJ would change her decision.

---

[11] Ms. Phillips's brief in support of sentence six remand refers to treatment that she received from Dr. James Robinson on September 12, 2016. (Doc. 29, p. 2). According to Ms. Phillips, Dr. Robison explained that since her surgery, Ms. Phillips's "symptoms had improved." (Doc. 29, p. 2). Ms. Phillips did not attach Dr. Robinson's September 12, 2016 treatment notes to her motion to remand. (*See generally* Doc. 29-1). However, assuming that Dr. Robinson stated that Ms. Phillips's symptoms had improved since her August 15, 2016 surgery, then the Court would be inclined to find that this evidence is not material because rather than imposing limitations on Ms. Phillips's activity  because of her back pain, Dr. Robinson's statement suggests that Ms. Phillips responded well to the surgery.

## V.     CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's factual findings, and the ALJ and Appeals Council applied proper legal standards.  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court affirms.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2017.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE